**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| EDDIE MATHERS, individually and as independent representative for Joseph Mathers, <br><br> Plaintiff, <br><br> v. <br><br> HSBC BANK and OCWEN LOAN SERVICES, LLC, <br><br> Defendants. | Case No. 16 C 9572 <br><br> Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion to Dismiss the federal claims from the Complaint and Mathers' Motion for Preliminary Injunction. For the reasons stated herein, Defendants' Motion is granted, and Mathers' Motion is denied.

### I. BACKGROUND

Ms. Eddie Mathers ("Mathers" or "Plaintiff") sued two financial institutions: Defendants HSBC Bank ("HSBC") and Ocwen Loan Servicing, LLC ("Ocwen"). The following facts are derived from Plaintiff's Amended Complaint and, in accordance with the standard at this stage, will be taken as true. *See Alam v. Miller Brewing Co.,* 709 F.3d 662, 665-66 (7th Cir. 2013).

Mathers' principal residence is a condominium located at 300 N. State Street, Apartment #3808, Chicago, Illinois where she has resided since 1995. (Compl. ¶¶ 1, 7.) She alleges her mortgage is paid in full. (*Id.* ¶ 10.)

On January 4, 2006, Encore Credit Corporation contacted Plaintiff to tell her that she and her husband were eligible for a loan on their condominium properties. (*Id.* ¶ 8.) Plaintiff advised Encore that she was not interested in a loan on Unit #3808, but that she was interested in a loan on her other property, Unit #2128. (*Id.* ¶¶ 10, 13; Jan. 15, 2006 Letter to Encore, Ex. to Compl., Dkt. No. 43; Jan. 26, 2006 Letter to Encore, Ex. to Compl., Dkt. No. 43) Regardless, Encore set up an Investor Loan #326556 for Unit #3808 rather than Unit #2128. (*Id.* ¶ 12.) Plaintiff received loan documents on Unit #3808 and, due to the error, Plaintiff never signed those documents. (*Id.*) Plaintiff again advised Encore, via phone and mail, that she was not interested in a loan on Unit #3808. (*Id.* ¶ 13.) Encore sent Plaintiff a Notice of Right to Cancel the loan on Unit #3808, which Plaintiff executed and mailed back on February 22, 2006. (*Id.* ¶ 15; Feb. 22, 2006 Letter to Encore, Ex. to Compl., Dkt. No. 43; Feb. 20, 2006 Notice of Right to Cancel, Ex. to Compl., Dkt. No. 43.) Mathers alleges she also sent back the check for the loan, attaching a March 9, 2006 letter from HomEq Servicing, acknowledging receipt of the

return of funds for the Encore Investor Loan #326556 regarding Unit #3808. (*Id.* ¶ 21; March 9, 2006 Letter, Ex. to Compl., Dkt. No. 43.)

On February 27, 2006, Encore sent a letter regarding investor loan #326556, but identifying the correct condominium, Unit #2128. (*Id.* ¶ 17; Feb. 27, 2006 Letter to Pl., Ex. to Compl., Dkt. No. 43.) All subsequent documentation reflected that the loan concerned Unit #2128. (*Id.*) On June 2, 2006, the loan on Unit #2128 was transferred to Defendant Ocwen. (*Id.* ¶¶ 20-21; June 2, 2006 Letter to Pl., Ex. to Compl., Dkt. No. 43.)

Approximately three years later, HSBC filed a foreclosure action in state court on Unit #3808. (*Id.* ¶ 22.) The foreclosure and sale of the Plaintiff's property was terminated at the end of 2011, presumably due to settlement. (*Id.* ¶ 27.) In December 2011, HSBC and Mathers executed a settlement agreement, allegedly agreeing that Defendants would offer Mathers a new loan for $143,000.00 secured by Unit #3808. (*Id.* ¶ 42.) According to Plaintiff, Defendants never paid Plaintiff the $143,000.00 and never provided her with new loan documentation in accordance with their settlement agreement. (*Id.* ¶¶ 28, 43.)

In June 2015, HSBC filed a second state-court mortgage foreclosure complaint, which was dismissed in February of 2016. (*Id.* ¶ 45.) On May 17, 2016, HSBC filed a third mortgage

foreclosure in the Circuit Court of Cook County, No. 2016 CH 6805, which is currently pending. (*Id.* ¶ 46.) The state court entered a Judgment for Foreclosure and Sale in that case on April 26, 2018. (Ex. 76 to Pl.'s Mot. for Prelim. Inj., Dkt. No. 122.)

The main thrust of the Complaint is that Plaintiff never entered into a loan or mortgage secured by Unit #3808 at any time, but through intentional fraud or inadvertent error, the debt supposed to be secured by Unit #2128 was secured by Unit #3808 instead. The Complaint also asserts that even if a mortgage of Unit #3808 did exist, Mathers rescinded that loan.

The Complaint does not allege any specific counts, but cites violations of multiple federal laws as the basis for subject matter jurisdiction: the Truth in Lending Act ("TILA"), 15 U.S.C. 1601 *et seq.*; the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*; the Fair Accurate Credit Transaction Act, *see* 15 U.S.C. §§ 1681c(g), 1681n; and Chapter 47 (False and Fraud Statements) of the U.S. Criminal Code, 18 U.S.C. § 1001 *et seq*. The Complaint also alleges state law claims for fraud, breach of contract (namely, the settlement agreement), violations of the Illinois Consumer Fraud and Deceptive Business Practice Act, 815 ILCS 505/1 *et seq.*, slander of title, and intentional infliction of emotional distress.

Defendants move to dismiss only the federal-law allegations, arguing that the Complaint fails to state any federal claim upon which relief may be granted. *See* FED. R. CIV. P. 12(b)(6). In deciding a motion to dismiss, a court may consider "the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago,* 675 F.3d 743, 745 n.1 (7th Cir. 2012). The Court will consider each federal claim in turn.

## II. DISCUSSION

### A. Defendants' Motion to Dismiss Federal Claims

#### *1. Truth in Lending Act Claims*

##### a. TILA Claim Against Ocwen

Ocwen moves to dismiss the Truth in Lending Act ("TILA") claim, arguing that, as a loan servicer, it cannot be held liable for any alleged TILA violations. Ocwen is correct. "TILA expressly disclaims liability for servicers unless they also own or owned the obligation." *Garcia v. HSBC Bank USA, N.A.,* No. 09 CV 1369, 2009 U.S. Dist. LEXIS 114299, at *6 (N.D. Ill. Dec. 7, 2009) (collecting cases); *see also Bills v. BNC Mortgage, Inc.,* 502 F. Supp. 2d 773, 775 (N.D. Ill. 2007) (granting servicer's motion to dismiss because servicers are not liable under TILA). The Complaint does not allege that Ocwen owns the loan at issue, nor is ownership

established by the attached exhibits. Accordingly, the TILA claims against Ocwen is dismissed with prejudice.

The Court notes that dismissal with prejudice is appropriate here given that the Plaintiff has amended the complaint several times already. (*See* Compls., Dkt. Nos. 1, 13, 31, 43.)

### b. *TILA Claim Against HSBC*

HSBC moves to dismiss the TILA claim against it on two grounds, asserting first, that the Complaint fails to allege any specific TILA disclosure violation, and second, that the claim is untimely. In its first argument, HSBC points out that "[TILA] does not substantively regulate consumer credit but rather 'requires disclosure of certain terms and conditions of credit before consummation of a consumer credit transaction.'" *Rendler v. Corus Bank, N.A.*, 272 F.3d 992, 996 (7th Cir. 2001) (citation omitted). HSBC argues that because Mathers fails to allege specific information that should have been disclosed here, she fails to state a claim under TILA.

But TILA provides consumers with substantive rights beyond of the disclosure of information. One such right relevant here: TILA provides consumers with an unqualified right to rescind a credit transaction if a security interest is or will be retained in their principal dwelling. 15 U.S.C. § 1635. Here, the Complaint alleges that Mathers sent HSBC notice rescinding the loan secured by her

home (Unit #3808) on February 22, 2006. (Compl. ¶ 15.) Once a consumer has notified the lender of her intention to rescind, TILA requires that "within 20 days after the receipt of a notice of rescission, the creditor shall return to the obligor any money or property given . . . and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction." 15 U.S.C. § 1635(b). TILA and its corresponding regulations "do[] not permit the creditor to retain its security interest, or to withhold money or property, pending the consumer's return of what she received under the agreement." *Velazquez v. HomeAmerican Credit, Inc.,* 254 F. Supp. 2d 1043, 1044-45 (N.D. Ill. 2003) (citing 15 U.S.C. § 1635(b); 12 C.F.R. § 226.23(d)(3)). Thus, Defendants had 20 days from the receipt of Mathers' notice to "take any action necessary or appropriate to reflect the termination of any security interest created under the transaction." 15 U.S.C. § 1635(b). The creditor is required to take such action *prior* to the consumer tendering money or property acquired in the transaction. *See Velazquez,* 254 F. Supp. 2d at 1045 (noting that the statutory scheme is "arguably inequitable" in that respect); *see also Williams v. Homestake Mortgage Co.,* 968 F.2d 1137, 1140 (11th Cir. 1992) (citing 17A Am. Jur. 2d Contracts § 590, at 600-01 (1991) (finding TILA's scheme contrary to the rule under common law rescission, where the rescinding party must

tender first)). Here, the Complaint alleges that Mathers exercised her unqualified right to rescind the mortgage loan on Unit #3808 within 3 days of executing the loan and that Defendants failed to honor that rescission within 20 days (or at all). (Compl. ¶¶ 14-15, 18.) Given the liberal pleading standard afforded to *pro se* complaints, this Complaint's allegations are sufficient to state a claim. *See Dowdy v. First Metro. Mortg. Co.*, No. 01C7211, 2002 WL 745851, at *2 (N.D. Ill. Jan. 29, 2002).

HSBC also contends that the TILA claim is untimely. HSBC argues that TILA's right of rescission is completely extinguished after a three-year period, citing *Beach v. Ocwen Federal Bank,* 523 U.S. 410, 412 (1998). *Beach* makes clear that any substantive right to rescind is barred after TILA's three-year statutory time frame elapses. *See id.* at 419 ("[T]he Act permits no federal right to rescind, defensively or otherwise, after the 3-year period of § 1635(f) has run."). However, this is beside the point. Mathers alleges she invoked her right to rescission long before the three-year time period expired, making that time limit (and *Beach*'s holding) irrelevant here. Far more relevant is *Jesinoski v. Countrywide Home Loans, Inc.,* 135 S.Ct. 790 (2015). In that case, the Supreme Court clarified that a consumer does not need to bring suit within TILA's three-year period in order to rescind the loan;

rather, a consumer may exercise the right to rescind merely by notifying the creditor of her intention to rescind. *Id.* at 792.

Here, the Complaint alleges that Mathers invoked her right to rescind well-within TILA's time window. The executed loan documents are dated February 20, 2006. (*See* February 20, 2006 Mortgage Loan, Ex. A to Defs.' Mot. to Dismiss, Dkt. No. 114.) Mathers disputes the validity of those documents, but argues that even if they are valid, she properly rescinded the loan under TILA. The Complaint alleges that she received a Notice of Right to Cancel the loan on Unit #3808 on February 14, 2006 and subsequently mailed the executed form back on February 22, 2006, invoking her right to rescind the loan. (Compl. ¶¶ 12, 14-15.) Further, the Complaint adequately alleges that the Defendants were required to honor that rescission, but never did. (*Id.* ¶¶ 23-25.) Although the dates are not perfectly clear (given that Mathers alleges she received the notice of rescission prior to the loan date), the loan is dated February 20, 2006 and the Complaint alleges the rescission documents were executed and sent back on February 22, 2006, which is within TILA's three-day window to rescind.

The question before the Court is not whether Mathers timely invoked her right to rescind—she clearly alleged she did—but whether Mathers timely filed suit on Defendants' failure to honor

that rescission. This question, it turns out, is more complicated than Defendants suggest.

The Seventh Circuit recently took up a case with remarkably similar facts. In *Fendon v. Bank of America, N.A.,* 877 F.3d 714, 715-16 (7th Cir. 2017), the plaintiff borrowed money from his bank and secured the loan with a mortgage on his home. He allegedly rescinded the loan within TILA's three-year window, but that the bank failed to honor his rescission. *Id.* at 716. The bank foreclosed, and the property was sold. *Id.* Several years later, on the day the final judgment confirming the foreclosure was entered, the plaintiff filed a TILA action seeking damages and rescission in federal court. *Id.* The Seventh Circuit held that any damage claim for TILA violations was untimely given that TILA sets a one-year period of limitations for damage suits. *Id.* Thus, the plaintiff had only one-year to file a lawsuit based on the bank's failure to honor the rescission. *Id.* And the rescission claim fared no better because it was barred by *Rooker-Feldman*, seeing as the plaintiff's property had already been foreclosed in the state court action by the time plaintiff filed suit. *Id.* The Seventh Circuit explained that under *Rooker-Feldman,* "[f]ederal district courts lack authority to revise the judgments of state courts." *Id.* (citations omitted). Accordingly, the Seventh Circuit affirmed the district court's dismissal of the complaint on

timeliness grounds. *Id.* Notably, Justice Easterbrook stated, albeit in dicta, that "[i]f [the plaintiff] had filed suit before 2011, when the foreclosure action started, he might have had a strong argument that rescission may be enforced at any time, subject only to the doctrine of laches that governs equitable actions in the absence of a statutory time limit. Tied as it is to § 1640(a), the one-year limit in § 1640(e) would not have applied." *Id.* at 716; *but cf. Fendon v. Bank of Am., N.A.,* No. 16 C 3531, 2017 WL 914782, at *4 (N.D. Ill. Mar. 8, 2017) (collecting cases and stating that "[t]he court agrees with other courts in this district who have concluded that TILA's one-year limitations period for damages actions applies to suits seeking enforcement of rescission."), *aff'd,* 877 F.3d 714 (7th Cir. 2017) (Court notes that the Seventh Circuit opinion did not comment on the district court's statement that the one-year limitations period applies to rescission claims).

*Fendon* directs the result here. Just like the plaintiff there, Mathers filed her Complaint too late to maintain a claim for damages or rescission. The Complaint alleges that Mathers invoked her right to rescind on February 22, 2006, but that Defendants failed to honor the rescission. (Compl. ¶¶ 14-15, 23-25.) A failure to rescind is a separate TILA violation, giving rise to claims for damages and/or rescission. *See Jenkins v.*

*Mercantile Mortg. Co.* 231 F. Supp. 2d 737, 745 (N.D. Ill. 2002) (citation omitted). Mathers' claim accrued around the end of March 2006 when Defendant failed to honor her rescission within the 20-day period as required. *See In re Hunter,* 400 B.R. 651, 657 (Bankr. N.D. Ill. 2009) (claims for failure to effectuate rescission accrue twenty days after the creditor receives the notice of rescission). TILA entitled Mathers to sue within a one-year period for the violation, but Mathers did not file suit until October 7, 2016, over ten years later. 15 U.S.C. § 1640(e). That is too late. *See Fendon,* 877 F.3d at 716.

Similarly, Mathers' rescission claim is also barred. Like the plaintiff in *Fendon,* Mathers filed suit after the mortgage foreclosure proceeding was already underway. The state court proceeding resulted in a Judgment for Foreclosure and Sale entered on April 26, 2018. (Ex. 76 to Pl.'s Mot. for Prelim. Inj., Dkt. No. 122.) "Federal district courts lack authority to revise the judgments of state courts. *See Fendon v. Bank of Am., N.A.,* 877 F.3d 714, 716 (7th Cir. 2017) (citations omitted); *see also Mains v. Citibank, N.A.,* 852 F.3d 669, 677 (7th Cir. 2017) ("Insofar as [the plaintiff] alleges he had the right to rescind in 2015, he also runs into *Rooker-Feldman*. The existence of such a right is possible only if the state court's prior foreclosure judgment is set aside."), *cert. denied,* 138 S.Ct. 227. Here,

Mathers' rescission claim is barred by *Rooker-Feldman* given the state court's foreclosure judgment. *See id.* Thus, both forms of relief—damages and rescission—are precluded here. As *Fendon* noted, Mathers may have had a valid claim for rescission that continued after TILA's one-year statutory period for damages actions expired, but that claim was barred once the state court entered its foreclosure judgment. Accordingly, Mathers' TILA claim against HSBC must be dismissed with prejudice.

*2. Fair Credit Reporting Act Claim*

Defendants move to dismiss any claim based on the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*. Congress enacted the Fair Credit Reporting Act to regulate all facets of the preparation, dissemination, and use of credit reports. *See* 44 Am. Jur. Proof of Facts 3d 287. FCRA "require[s] that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer." 15 U.S.C. § 1681. In addition to imposing obligations on consumer reporting agencies, FCRA contains requirements for entities like Defendants that furnish information to those agencies. *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 433 (7th Cir. 2009). The FCRA requires that "[a]fter receiving notice . . . of a dispute with regard to the completeness or accuracy of any

information provided" to a consumer reporting agency, the furnisher must conduct an investigation regarding the disputed information and report the results to the agency. 15 U.S.C. § 1681s-2(b)(1). If the investigation concludes that a disputed item is inaccurate or cannot be verified, the furnisher must promptly modify, delete, or block the reporting of that information. 15 U.S.C. § 1681s-2(b)(1)(E). Here, the Complaint does not allege that Mathers contacted any credit agency to alert them to an inaccuracy in her credit report. (*See generally* Compl.) Further, the Complaint contains no allegations that Defendants furnished inaccurate information to a credit agency or that Defendants did not investigate or promptly delete inaccurate information relayed to a credit agency. (*See id.*) As such, this claim is dismissed with prejudice. *See Ori v. Fifth Third Bank,* 603 F. Supp. 2d 1171, 1174 (E.D. Wis. 2009).

   *3. Fair and Accurate Credit Transaction Act Claim*

The Fair and Accurate Credit Transaction Act ("FACTA"), 15 U.S.C. §§ 1681c(g), 1681n, was enacted as an amendment to the Fair Credit Reporting Act to prevent thieves from pulling credit card numbers from printed consumer receipts. *See* 51 A.L.R. Fed. 2d 273. FACTA regulates, among other things, the information included on consumer receipts, *see* 15 U.S.C. § 1681c(g). It is unclear to the Court how the facts alleged relate to FACTA's provisions. Based

on the absence of any alleged facts supporting a claim under FACTA, the FACTA claims are dismissed with prejudice.

*4. Fraud and False Statements Claim*

Defendants move to dismiss the claims based on a violation of Chapter 47 of the U.S. Criminal Code for fraud and false statements. *See* 18 U.S.C. § 1001 *et seq*. Chapter 47 is part of the criminal code. The criminal code does not provide a private right of action to private citizens, which means that Mathers (or any other individual citizen) cannot bring a lawsuit based on its statutory provisions. *See Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 190 (1994) (noting that a private right of action is not inferred from a criminal prohibition). To pursue an alleged violation under Chapter 47, Mathers must refer a claim to the U.S. Attorney's Office. The Government, not private citizens, chooses whether and when to bring criminal charges. Accordingly, any claim based on the criminal code in the Complaint is dismissed with prejudice.

**B. Mathers' Motion for Preliminary Injunction**

Mathers asks this Court for a preliminary injunction staying the sale of Unit #3808. As discussed above, the Court "lack[s] authority to revise the judgments of state courts." *See Fendon,* 877 F.3d at 716 (citations omitted). Here, the state court has already entered a judgment of foreclosure. As such, this Court

has no jurisdiction and Mathers must seek relief from state court. As to claims other than rescission, as made clear from the above discussion, Mathers cannot establish that she is likely to succeed on the merits of those federal claims. *See Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008). Accordingly, Mathers motion for preliminary injunction is denied.

### III. <u>CONCLUSION</u>

For the reasons stated herein, Defendants' Motion to Dismiss all federal claims is granted. Mathers' Motion for Preliminary Injunction is denied. The state law claims remain.

**IT IS SO ORDERED.**

                                              Harry D. Leinenweber, Judge
                                              United States District Court

Dated: 8/13/2018